**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

ADRIAN TRAYLOR,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )          **Civil Action No. 1:22-00303**
                                         )
CHANDRA CAROTHERS, *et al.*,             )
                                         )
            Defendants.                  )

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 13), filed on December 1, 2022. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 17.) Plaintiff, however, failed to file a response. Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 13) should be granted.

**FACTUAL AND PROCEDURAL HISTORY**

On July 25, 2022, Plaintiff, acting *pro se*,[1] filed his Application to Proceed Without

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Prepayment of Fees and Costs and Complaint for alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) Chandra Carothers, PA at FCI McDowell; and (2) Mrs. C. Davidson, PA at FCI McDowell. (Document No. 2.) Plaintiff alleges that from November 2021 until his transfer to a different institution in May 2022, Defendants denied him adequate medical care for a scalp condition he developed while in the Special Housing Unit ["SHU"]. (<u>Id.</u>, pp. 4 – 7.) Plaintiff states that beginning in November 2021, he "put in numerous of sick call forms by electronic and paper form to PA Mrs. C. Davidson." (<u>Id.</u>, p. 4.) Plaintiff, however, asserts that his requests were ignored "for weeks." (<u>Id.</u>) Plaintiff alleges that after weeks of delay, PA Davidson came by his cell and Plaintiff requested that she have Plaintiff removed from his cell so she could have a clear view of his scalp condition. (<u>Id.</u>) Plaintiff claims that PA Davidson refused his request and instructed Plaintiff to part his hair with his hands so she could see his scalp. (<u>Id.</u>) Plaintiff complains that PA Davidson "look for not even a full second and told [Plaintiff] to order medicated dandruff shampoo, and then [she] immediately walked off without giving [Plaintiff] a chance to speak." (<u>Id.</u>) Plaintiff asserts that he complied with PA Davidson's instructions, but the medicated dandruff shampoo did not help his scalp condition. (<u>Id.</u>) Plaintiff explains that he continued to submit sick call requests, but PA Davidson continued to disregard his requests and refused to give him medical treatment. (<u>Id.</u>) Plaintiff states that he submitted paper and electronic sick call requests weekly. (<u>Id.</u>, p. 5.) Plaintiff claims that as a result of the lack of treatment, his head became infected. (<u>Id.</u>) Plaintiff explains that he had a "wound that started to leak blood, puss, and give off a foul smell." (<u>Id.</u>) Plaintiff states that he "addressed [his] concerns

2

to PA Davidson and [he] was told to stop crying like a baby, it's not like [he was] dying, this is prison." (Id.) Plaintiff alleges that in March 2022, the Medical Head Administrator D. Ward was conducting rounds with executive staff. (Id.) Plaintiff states that he gave Administrator Ward a handwritten complaint and explained how PA Davidson had been disregarding Plaintiff's need for medical treatment for five months. (Id.) Plaintiff further alleges that he showed Administrator Ward his head and how it was oozing puss and blood. (Id.) Plaintiff claims that Administrator Ward "apologized and said he would get it fixed." (Id.) Plaintiff acknowledges that the following day, Plaintiff was evaluated at medical by PA Chandra Carothers. (Id.) Plaintiff complains that upon his entry into the examination room, "Mrs. Carothers stated, 'Oh, this is the big baby crying to the boss' and she questioned why Plaintiff gave his complaint to Administrator Ward." (Id., pp. 5 – 6.) Plaintiff contends that he explained that the complaint was given to Administrator Ward due to the delay of treatment by PA Davidson, but PA Carothers "continued to verbally abuse and insult [him] because [he] gave Mr. D. Ward the complaint." (Id., p. 6.) Plaintiff acknowledges that PA Carothers then examined his scalp by pushing her fingers against the wound and "blood and puss immediately started to run out." (Id.) Plaintiff asserts that in response, PA Carothers stated "Oh my, I'm going to prescribe you with Doxycycline." (Id.) Plaintiff alleges that he further informed PA Carothers that he had been experiencing "pain and headaches" for months due to the infection. (Id.) Although Plaintiff acknowledges that he was given 28 pills of Doxycycline, Plaintiff claims the medication didn't "heal the infection." (Id.) Plaintiff complains that he informed PA Carothers of the foregoing and "she stated that she would get [him] more antibiotics, but she never returned." (Id.) Plaintiff contends he was transferred in May 2022, but he is "still fighting the infection which is leaving scar tissue as it fights to heal." (Id.) As relief, Plaintiff

3

requests monetary damages. (Id., p. 7.)

As Exhibits, Plaintiff attaches the following: (1) A copy of a TRULINC message from Medical Services to Plaintiff dated November 19, 2021 (Document No. 2-1, p. 1.); (2) A copy of a TRULINC messages from Plaintiff to Medical Services dated February 20, 2022 (Id., pp. 2 - 3.); (3) A copy of a Rejection Notice dated February 4, 2022, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office regarding Remedy ID No. 1109080-R1 (Id., p. 4.); (4) A copy of a TRULINC message from Medical Services to Plaintiff dated March 3, 2022 (Id., p. 5.); (5) A copy of a TRULINC messages from Plaintiff to Medical Services dated March 10, 2022 (Id., p. 6.); (6) A copy of a TRULINC messages from Plaintiff to Health Services dated June 1, 2022 (Id., p. 7.); (7) A copy of a TRULINC message from Health Services to Plaintiff dated June 8, 2022 (Id., p. 8.); (8) A copy of a TRULINC messages from Plaintiff to Health Services dated June 16, 2022 (Id., p. 9.); (9) A copy of a TRULINC messages from Plaintiff to Health Services dated June 27, 2022 (Id., p. 10.); and (10) A copy of a TRULINC message from Health Services to Plaintiff dated June 28, 2022 (Id., p. 11.)

The Court determined that Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (Document No. 1) was deficient as such did not contain certification by a prison official as to the amount of funds in Plaintiff's account. (Document No. 4.) By Order entered on July 26, 2022, the undersigned directed the officer at Manchester FCI having responsibility for administering prisoner accounts to complete the Certificate portion at the end of Plaintiff's Application and return such to the Court. (Id.) On September 6, 2022, Plaintiff's completed Application to Proceed Without Prepayment of Fees and Costs was filed with the Court. (Document No. 5.) By Order entered on September 7, 2022, the undersigned denied Plaintiff's

4

Application to Proceed Without Prepayment of Fees and Costs (Document Nos. 2 and 5) and directed Plaintiff to pay the filing and administrative fee totaling $402.00 to the Clerk on or before October 7, 2022. (Document No. 6.) On September 29, 2022, Plaintiff paid the filing and administrative fee totaling $402.00. (Document No. 7.) After screening the case pursuant to 28 U.S.C. § 1915A, the undersigned determined that Plaintiff had potentially stated a viable claim under Bivens and directed the Clerk to issue process on behalf of Plaintiff. (Document No. 8.) The Clerk issued process the same day. (Document No. 9.)

On December 1, 2022, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 13 and 16.) Defendants argue that Plaintiff's claim should be dismissed based on the following: (1) Plaintiff failed to exhaust his administrative remedies (Document No. 16, pp. 6 – 8); (2) "Plaintiff's individual capacity claims are not cognizable under Bivens" (Id., pp. 8 – 19); (3) Plaintiff cannot establish the requisite personal involvement necessary to support Bivens liability for the Defendants (Id., p. 19); (4) Defendant Carothers is a Commissioned Officer of the United States Public Health Service entitled to absolute immunity (Id., pp. 19 – 20); (5) Defendants were not deliberately indifferent to Plaintiff's medical care (Id., pp. 20 – 23); and (6) Defendants are entitled to qualified immunity (Id., pp. 23 – 26).

As Exhibits, Defendants attach the following: (1) The Declaration of Destiny Spearen (Document No. 13-1, pp. 2 - 4); (2) A copy of Plaintiff's Administrative Remedy History dated October 5, 2022 (Id., pp. 6 - 7); (3) A copy of Plaintiff's "Inmate History Quarters" (Id., pp. 9 – 10); (4) A copy of Program Statement 5270.11 (Id., pp. 12 – 18); (4) A copy of Plaintiff's Administrative Remedy Generalized Retrieval dated October 5, 2022 (Id., pp. 20 – 21); (5) The

5

Declaration of Chandra Carothers (Document No. 13-2, pp. 2 – 3); and (6) A copy of Plaintiff's pertinent medical records (Id., pp. 5 – 117).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on December 5, 2022, advising him of the right to file a response to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 17.) The undersigned specifically advised Plaintiff that "failure to respond to Defendants' Motion may result in a recommendation of denial of the relief sought in the Complaint and dismissal of the suit." (Id.) On December 27, 2022, Plaintiff filed a Motion for Extension of Time. (Document No. 19.) Specifically, Plaintiff requested a 60-day extension of time to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Id.) By Order entered on January 3, 2023, the undersigned granted Plaintiff's Motion and directed that his Response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Judgment" be filed by March 3, 2023. (Document No. 20.) Plaintiff, however, failed to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment."

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted

as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of

law. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-moving movant." Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020)(citations omitted.); also see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(A "material fact" is a fact that could affect the outcome of the case); CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 *4th Cir. 2020)("A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict of the nonmoving party."); FDIC v. Cashion, 720 F.3d 169, 180 (4th Cir. 2013)(A "genuine issue" of material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor). "The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact." Wai Man Tom, 980 F.3d at 1037. The moving party may satisfy this burden by showing that the non-moving party has failed to prove an essential element of the non-moving party's case that the non-moving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim.). Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. See Celotex Corp., 477 U.S. at 325, 106 S.Ct. 2548; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); also see Wai Man Tom, 980 F.3d at 1037(citation

omitted)("[T]o survive the motion for summary judgment, [the non-moving party] may not rest on the allegations averred in his pleadings. Rather, the nonmoving party must demonstrate specific, material facts exist that give rise to a genuine issue.") Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); Perry v. Kappos, 2012 WL 2130908, * 3 (4th Cir. 2012)(quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)("At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action.") All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; also see Sedar v. Reston Town Center Property, LLC, 988 F.3d 756, 763 (4th Cir. 2021)("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Additionally, the court is not allowed to make credibility determinations or weigh the evidence at the summary judgment stage. Stanton v. Elliott, 25 F.4th 227, 234 (4th Cir. 2022)(noting that the disbelief in a non-moving party's ability to succeed on the merits is insufficient to grant summary judgment). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate. See Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993)(Summary judgment is proper where it is apparent from the record that "no reasonable jury could find for the nonmoving party.")

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[2] The United States Supreme Court has held

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar*

that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. See <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

### A.    **Defendant Carothers:**

In Defendants' Motion, Defendant Carothers argues that she is a United States Public Health Service Employees and is entitled to absolute immunity. (Document No. 13 and Document No. 16, pp. 19 - 20.) Since she is entitled to absolute immunity, defendant Carothers contends "she is entitled to absolute immunity which deprives the Court of subject matter jurisdiction, and she must be dismissed from this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure." (<u>Id.</u>) In support, Defendants attach Defendant Carothers' Declaration. (Document No. 13-2, pp. 2 – 3.) In her Declaration, Defendant Carothers states that she is employed by the BOP as a Physician Assistant at FCI McDowell. (<u>Id.</u>, p. 2.) Defendant Carothers further declares that she is "a Commissioned Officer in the United States Public Health Service and has been at all times at issue in this case." (<u>Id.</u>) Plaintiff did not file a Response disputing the foregoing.

Title 42 U.S.C. § 233(a) provides as follows:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damages for personal injury, including death, resulting from the performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the

---

*Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id*.

> Public Health Service while acting within the scope of his office or employment,
> shall be exclusive of any other civil action or proceeding by reason of the same
> subject-matter against the officer or employee . . . whose act or omission gave rise
> to the claim.

Thus, Congress made proceedings under the Federal Tort Claims Act the sole avenue to seek relief against a Public Health Service employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. The United States Supreme Court has held that "[t]he immunity provided by § 233(a) precludes *Bivens* actions against individual [Public Health Service] officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment." Hui v. Castaneda, 559 U.S. 799, 130 S.Ct. 1845, 1847, 176 L.Ed.2d 703 (2010)(stating that Section 233(a) "plainly precludes a *Bivens* action against petitioners by limiting recovery for harms arising from the conduct at issue to an FTCA action against the United States.") Defendant Carothers holds the position of a Physician Assistant at FCI McDowell. Thus, Plaintiff appears to allege that Defendant Carothers is responsible for failing to ensure that he was provided timely and appropriate medical care. Defendant Carothers was clearly acting within the scope of her employment when performing functions pertinent to her position, such as evaluating and providing medical care to Plaintiff. Based on the foregoing, the Court finds that Defendant Carothers was a Commissioned Officer in the United States Public Health Service during the time period relevant to this Complaint and has absolute immunity from suit for all claims arising from the medical care provided to Plaintiff. The Court, therefore, respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 13) be granted as to Defendant Carothers. The undersigned finds it unnecessary to consider the other reasons which Defendant Carothers has submitted for dismissal of Plaintiff's claims.

**B.    Failure to exhaust.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

(3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims she raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal

suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Although failure to exhaust available administrative remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing Drippe v. Tobelinski, 604 F.3d 778, 782 (3rd Cir.

15

2010)); Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4th Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, supra, 376 F.3d at 655(internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff

member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Complaint, Plaintiff indicates that he did not present the facts related to his Complaint in the prisoner grievance procedure. (Document No. 2, p. 3.) Plaintiff states that "[s]taff refused to give [him] administrative remedies." (Id.) In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning his Bivens claim. (Document No. 13 and Document No. 16, pp. 6 – 8.) Although Defendants acknowledge that Plaintiff alleges that "staff refused to give [him] administrative remedies," Defendants argue that "Plaintiff has not listed the

names or positions of staff members refusing to give him forms, nor has he described the dates, times, or circumstances that he requested the remedy forms." (Document No. 16, pp. 7 - 8.) Defendants further note that Plaintiff filed Remedy ID No. 1109080-R1 at the regional level on January 31, 2022, and it was rejected on February 3, 2022. (Id., p. 8) Thus, Defendants contend that "Plaintiff clearly had access to administrative remedies, as he was able to file ID No. 1109080-R1." (Id.) Finally, Defendants assert that "[d]espite his claims of being thwarted by staff in receiving remedies, he has been able to obtain the necessary forms for filing a claim in federal court for monetary damages without any interference from staff." (Id.) Accordingly, Defendants argue that Plaintiff's claim should be dismissed for failure to exhaust. (Id.)

In support, Defendants submit the Declaration of Ms. Destiny Spearen, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 13-1.) Ms. Spearen declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Specifically, Ms. Spearen states as follows in her Declaration (Id., pp. 2 - 4.):

***

3.      Plaintiff was incarcerated at FCI McDowell from October 7, 2021, to May 25, 2022.

***

14.     An inmate's Administrative Remedy filing history is available for review through SENTRY as an Administrative Remedy Generalized Retrieval Form.

15.     Here, Plaintiff has only filed one administrative remedy throughout the entirety of his incarceration

16.     His sole remedy, ID No. 1109080-R1, was filed at the regional level on January 31, 2022, and it was rejected on February 3, 2022.

***

18

(Id., p. 3.) Plaintiff failed to file a response disputing the foregoing.

Based upon a review of the record, the undersigned finds that Defendants have met their burden proving that Plaintiff failed to exhaust his available administrative remedies prior to filing his Complaint. Plaintiff does not dispute that he failed to properly exhaust his administrative remedies prior to filing his Complaint. Plaintiff, however, contends that the administrative remedy process was unavailable. As stated above, whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel, 2017 WL 4004579, at * 3; Lee, 789 F.3d at 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse, 741 Fed.Appx. at 178 ("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") To establish his claim of unavailability, Plaintiff "must adduce facts showing that he was prevent, through no fault of his own, from availing himself of that procedure." Graham, 413 Fed.Appx. at 663. In his Complaint, Plaintiff merely indicates that the administrative process was unavailable because staff refused to provide him with forms. (Document No. 2.) Such bare and conclusory assertions without producing a scintilla of evidence is insufficient to create a genuine dispute of material fact. See Silling v. Erwin, 881 F.Supp. 236, 237 (S.D.W.Va. 1995)(a party must offer more than bare allegations or conclusory statements to survive a motion for summary judgment). It is well established that a bare assertion that is unsupported by any detail will not satisfy a prisoner-plaintiff's burden of showing that remedies were unavailable. Mendez v. Breckon, 2021 WL 4268890, * 3 (W.D.Va. Sept. 20, 2021)(citation omitted); Creel, 2017 WL 4004579, at * 4 – 6 ("Unsubstantiated and conclusory assertions by an inmate that prison officials thwarted pursuit of the administrative process are insufficient to excuse failure to exhaust."); Tosado v. Gilbert, 2020

19

WL 6487685, * 3 – 4 (W.D.Va. Nov. 4, 2020)(stating that "numerous courts within the Fourth Circuit and elsewhere have held that 'unsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fails to create a genuine issue of material fact sufficient to withstand summary judgment"). Furthermore, it is undisputed that Plaintiff's underlying claim occurred between November 2021 and May 2022. During this period of time, SENTRY records reveal that Plaintiff filed Remedy ID No. 1109080-R1 at the regional level on January 31, 2022. Plaintiff's ability to file a grievance during this time period exhibits that the administrative remedy process was available to Plaintiff. See Ferguson v. Clarke, 2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period); Al Mujahidin v. Harouff, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could not avoid summary judgment by simply asserting an unsupported allegation that his grievances were not processed or destroyed, in light of documentary evidence showing that other grievances were processed). Based on the foregoing, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 13) be granted and Plaintiff's Complaint be dismissed in view of his failure to exhaust his administrative remedies. The undersigned finds it unnecessary to consider the other reasons that Defendants have submitted for dismissal of Plaintiff's claim.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants'

"Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 13), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: June 13, 2023.



Omar J. Aboulhosn
United States Magistrate Judge